UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| VERNA BOURASSA, GUARDIAN OF TAHLEN AARON BOURASSA,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, ROBERT NEUENFELDT, individually and UNKNOWN SUPERVISORY PERSONNEL OF THE UNITED STATES, individually,<br><br>Defendants. | 4:20-cv-4210<br><br>**COMPLAINT** |

COMES NOW, Plaintiff, Verna Bourassa as Guardian of Tahlen Aaron Bourassa, by and through their undersigned attorney, and for this complaint against Defendants, alleges as follows:

## JURISDICTION

1. Plaintiff, Verna Bourassa, as guardian of Tahlen Aaron Bourassa, (hereinafter "Bourassa") is a resident of Minnehaha County, state of South Dakota.

2. Jurisdiction is proper pursuant to 28 U.S.C. §1346(b) and the Federal Tort Claims Act, 28 U.S.C. §2671, et. seq., as amended and Pub.L.No. 103-138, Tit. III, § 308, Nov. 11, 1993, 107 Stat. 1416.

3. Jurisdiction is also proper pursuant to 42 U.S.C.A. §§ 1981, 1983, 1985 and 1988 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L. Ed. 619 (1971), as well as under the United States

1

Constitution, including its Fourth, Eighth and Fourteenth Amendments, and the Constitution of the State of South Dakota.

4. At all relevant times herein, the United States, by and through its Department of the Interior, Bureau of Indian Affairs, contracted with the Flandreau Santee Sioux Tribe and its Police Department pursuant to 25 U.S.C. 45f, et. seq., Indian Self Determination Act, to provide law enforcement services on the Flandreau Santee Sioux Indian Reservation.

5. At all relevant times herein, the Flandreau Santee Sioux Tribe and its Police Department operated a police department on the Flandreau Santee Sioux Indian Reservation and employed numerous employees, who were performing functions under the contract entered into pursuant to 25 U.S.C. 450f, et. seq., which renders said employees, United States Government employees.

6. At all relevant times herein, Defendant, Robert Neuenfeldt, was acting as Flandreau Chief of Police under the color of state and federal law, and in violation of Plaintiff's federally protected rights.

7. On or about June 11, 2019, Plaintiff submitted an Administrative Tort Claim in the amount of $5,012,884.20, as required by 28 U.S.C. § 2675 to the United States Department of the Interior, Office of the Solicitor, 5600 American Boulevard West, Suite 270, Bloomington, Minnesota 55437.

8. On July 8, 2019, the United States Department of the Interior denied Plaintiff's administrative claim, thereby allowing this Complaint.

9. As to Defendant, United States, this action is timely pursuant to 28 U.S.C.A. §2401(b) in that it was presented to the appropriate agency within two years of accrual, and

this action was filed within six months of receipt of the certified letter sent by the United States Department of the Interior denying the claim.

10. Plaintiff further invokes this Court's pendent jurisdiction over any and all state law claims and causes of action that derive from the same nucleus of operative facts that give rise to the federally based claims and causes of action pursuant to 28 U.S.C.A. § 1367.

## FACTS

11. On June 18, 2017, Bourassa was driving a vehicle with two (2) passengers; Morgan Ten Eyck (hereinafter "Ten Eyck") and Micah Roemen (hereinafter "Roemen").

12. In the early morning hours of June 18, 2017, Bourassa drove his vehicle on a gravel road in Moody County, South Dakota, a location not within the jurisdiction or under authority of the Flandreau Santee Sioux Tribe, and stopped near a rural residence located at 24364 484th Avenue, Dell Rapids, SD.

13. Near the rural driveway Robert Neuenfeldt (hereinafter "Neuenfeldt"), Chief of Police for Flandreau Santee Sioux Tribe, contacted Bourassa and threatened to take him to jail. Claimant drove away and was pursued by Chief Neuenfeldt and Logan Baldini, an uncertified deputy for the Moody County Sheriff's Office, in Chief Neunenfeldt's tribal police cruiser.

14. Sargent Kurtz, of the South Dakota Highway Patrol, was also initially involved in the pursuit.

15. It is believed that Bourassa, Ten Eyck and Roemen had not committed any crimes to justify the pursuit.

16. At the time Bourassa's vehicle was stopped, Neuenfeldt, and the other officers at the scene, knew the identity of the driver, Bourassa.

17. Neuenfeldt and the other officers at the scene knew that Bourassa was actively being monitored by the South Dakota Parole Board via a GPS ankle bracelet.

18. Notwithstanding that the officers knew specifically who was driving the vehicle, that there had been no violations of the law and that two innocent passengers were in the vehicle, a high-speed pursuit took place for over thirty minutes reaching speeds in excess of 100 miles per hour on gravel roads.

19. On two occasions, spike strips were laid out without proper authorization.

20. Just prior to the accident, spike strips were laid out and a barricade of police cars forced Bourassa to take a dead-end gravel road.

21. Defendants knew the dead-end road would result in an accident.

22. Prior to the devastating accident which caused Plaintiff's life-threatening injuries, the South Dakota Highway Patrol aborted the pursuit.

23. It is believed that Neuenfeldt disregarded orders to terminate the pursuit.

24. Once the Highway Patrol terminated the pursuit, Neuenfeldt and Baldini continued the pursuit causing Bourassa's vehicle to lose control and roll several times throwing all three occupants from the vehicle.

25. Although Neuenfeldt was employed and acting as law enforcement officer he never had jurisdiction over Bourassa and was not within the reservation boundary.

26. As a result of the accident all occupants suffered incapacitating injuries and were air lifted from the scene.

27. Bourassa suffered a serious traumatic brain injury and as a result of the accident, requires a guardian to protect him due to his impaired mental faculties.

28. Bourassa has sustained several thousands of dollars in medical bills for care resulting from injuries as a result of the accident.

29. Bourassa continues to undergo and will continue therapy for the rest of his life due to the permanent injuries suffered in the accident.

## COUNT I: NEGLIGENCE

Plaintiff realleges the information set forth in the paragraphs 1-29 above and further alleges:

30. Defendants owed a duty of care to Bourassa as the driver of the vehicle and breached this duty by failing to follow mandatory pursuit policies, causing severe and permanent damages to Bourassa.

31. Defendants' numerous violations of pursuit policies constitutes reckless disregard for the safety of others.

32. Defendants failed to follow the mandatory pursuit policy in the following respects:

    a. It is determined a vehicle pursuit is a use of force. This use of force is confined to appropriate tribal jurisdiction. No pursuit can be initiated when it is outside their area of jurisdiction. In addition, the officer failed to reasonably believe that Bourassa, if allowed to flee, presented potential danger to human life or may have caused serious injury;

    b. In "all areas of the jurisdiction", officers are expected to end their involvement of pursuit whenever the risk of their own safety or the safety of others outweighs the danger to the community if the suspect is not apprehended;

c. It is mandatory that the officer in the primary unit notify dispatch of five items. No such notification occurred;

d. A secondary unit will be engaged to move into position and assume the communication responsibility;

e. The secondary unit will coordinate the activities of other assessing units;

f. The supervisor is ultimately responsible for terminating the pursuit or allowing it to continue;

g. The supervisor will continually weigh the risks based on information being received from dispatch and the pursuing unit;

h. The supervisor will immediately terminate the pursuit when the pursuit is not in compliance with the requirements of this section;

i. Supervisors shall evaluate their actions based on the potential benefits of their actions and if they outweigh the risks that are involved;

k. If the pursuit extends off roadway, assessment of the risk must be determined to decide whether to continue the pursuit;

l. Officers in pursuit must have received approved IPA training in the use of BIA-OJS tire deflation devices;

m. Because the use of tire deflating devices are considered a roadblock, only the chief of police or a supervisor can authorize their use. The suspect must be a dangerous fleeing felon;

n. Safety circumstances must be an important factor;

o. Determination of the most suitable and safest location must be made;

6

 p. Tire deflation devices must never be used if there is belief the location is unsafe;

 q. Tire deflation devices should never be deployed with pedestrians in the immediate vicinity;

 r. Tire deflation devices should only be deployed after a safe location to observe the pursuit has been identified;

 s. A pursuit may only be extended beyond the reservation line if the primary control of pursuit is relinquished as soon as practical to police personnel of entered jurisdiction (here, the pursuit was never on tribal land);

 t. Officers must follow LE Handbook Section 2-24-02, authorization for pursuit when joining a pursuit initiated by another jurisdiction;

 u. OJS officers will discontinue pursuits initiated by another jurisdiction when a pursuit continues outside of their jurisdiction, unless an officer's safety becomes a consideration;

 v. High speed pursuits shall be limited to substantial crimes that require immediate action;

 w. High speed pursuits should not occur when the identity of the driver is known; and

 x. High speed pursuits should be ended whenever the risks to the safety of others outweighs the danger to the community if the suspect is not apprehended.

33. Defendants violated every requirement as set forth in paragraph 32, above.

34. Defendants' actions also violated the policies regarding the use of road blocks and spike strips.

35. The use of road blocks, and/or spike strips, may only be used in the case of suspected fleeing felons whose escape poses a danger to life.

36. Bourassa was not a fleeing felon whose escape posed a danger to life.

37. Defendants and the Bureau of Indian Affairs, an agency of the United States of America, acting by and through their servants and employees, all acting within the course and scope of their agency and employment with Defendant, were negligent and reckless through numerous violations of their own pursuit policies.

38. If Defendant United States were a person, it would be liable in accordance with the laws of the State of South Dakota and the Flandreau Santee Sioux Tribe.

39. As a direct legal result of Defendants' negligent, reckless and willful and wanton disregard for the safety of Bourassa, he sustained serious injuries and damages, which require substantial medical care and have resulted in permanent disability.

## COUNT II: 42 U.S.C.A. § 1983 (*BIVENS* ACTION)

Plaintiff realleges the information set forth in the paragraphs above and further alleges:

40. This claim for relief is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 288, 397, 91 S.Ct. 1999 29 L.Ed.2d 619 (1971), for violations of Plaintiff's rights under the Fourth and Fifth Amendments of the United States Constitution when Defendant Neuenfeldt used excessive, unreasonable and unwarranted force during the pursuit.

41.     At all times herein, Defendant Neuenfeldt acted under color and pretense of federal statutes, ordinances, regulations, policies, practices, customs and uses of the United States of America.

42.     On June 18, 2017, Plaintiff, Bourassa, had the right under the Fourth Amendment to be free from unreasonable search and seizure of his person.

43.     On June 18, 2017, Plaintiff, Bourassa, possessed the rights guaranteed by the Fifth Amendment to not be deprived of life and liberty without due process of law, including but not limited to, the right not to suffer physical harm from persons acting under the color of law that is intentionally or wantonly inflicted or which is accomplished with deliberate, reckless or callous indifference to her constitutional rights.

44.     One June 18, 2017, Plaintiff, Bourassa, had the rights guaranteed by the Equal Protection Clause and the Due Process Clause of the Fifth Amendment of the United States Constitution.

45.     On June 18, 2017, Defendant Neuenfeldt, while acting under the color of federal law as a United States Employee, intentionally deprived Plaintiff, Bourassa, of his Fourth Amendment right to be free from unreasonable seizures by subjecting him to excessive force during the pursuit.

46.     On June 18, 2017, Defendant Neuenfeldt, while acting under color of federal law as a United States Federal Employee, intentionally violated Plaintiff Bourassa's rights guaranteed by the Fifth Amendment to not be deprived of life and liberty without Due Process of Law, including but not limited to, the right not to suffer physical harm from persons acting under color of the law that is intentionally or wantonly inflicted or which is accomplished with deliberate, reckless or callous indifference to her constitutional rights.

While acting under color of federal law as a United States Federal Agent, Defendant Neuenfeldt was motivated by evil intent and conduct, which he engaged in by use of excessive force in the pursuit. This conduct showed reckless or callous indifference to his Constitutional rights.

47. Defendant Neuenfeldt, by using such unreasonable force, caused injury and damage to Plaintiff Bourassa, ultimately causing life threatening injuries.

48. At the time of the June 18, 2017 pursuit, Plaintiff Bourassa was not engaged in any assaultive behavior toward Defendant Neuenfeldt or any other persons.

49. The pursuit by Defendant Neuenfeldt was completely unjustified by any action of Plaintiff Bourassa and said pursuit constituted an unreasonable and excessive use of force in violation of Bourassa's guaranteed rights under the 14th Amendment to the United States Constitution, which protects pretrial detainees from punishment.

50. Defendant Neuenfeldt acted specifically and with the intent to deprive Plaintiff Bourassa of the following rights and privileges guaranteed under the United States Constitution:

    a. Freedom from unreasonable seizures, in the form of use of excessive force;

    b. Freedom from deprivation of liberty without Due Process of Law;

    c. Freedom from punishment prior to conviction for any crime; and

    d. Equal protection of the laws.

51. After the pursuit, Plaintiff Bourassa suffered life threatening, permanent injuries. Plaintiff suffered severe physical, emotional and psychological damage as a result of the conduct of Defendant Neuenfeldt and the Flandreau Santee Sioux Tribe.

52. Defendant Neuenfeldt and the Flandreau Santee Sioux Tribe subjected Plaintiff Bourassa to the afore-mentioned deprivations by either actual malice or deliberate indifference and disregard to Plaintiff's civil rights.

53. As a direct and proximate result of the afore-mentioned acts of Defendant Neuenfeldt and the Flandreau Santee Sioux Tribe, Plaintiff Bourassa suffered general damages in the form of conscious pain and suffering and loss of value of life and seek compensatory damages against Defendant Neuenfeldt in his individual capacity.

### COUNT III: SECOND CLAIM FOR RELIEF FOR SUPERVISORIAL RESPONSIBILITY FOR VIOLATIONS OF CIVIL RIGHTS UNDER THE COLOR OF LAW (*BIVENS* ACTION)

Plaintiff realleges the information set forth in the paragraphs above and further alleges:

54. This claim for relief is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 288, 397, 91 S. Ct. 1999 29 L.Ed.2d 619 (1971), for violation of Plaintiff Bourassa's rights under the Fourth and Fifth Amendments to the United States Constitution.

55. On and before June 18, 2017, Defendants implemented and maintained customs, policies, and/or practices to encourage the use of excessive force by Defendant Neuenfeldt. Defendant Neuenfeldt intentionally, deliberately and/or was indifferent to the violation of the constitutional rights of persons in the same situation as and including Plaintiff Bourassa.

56. On June 18, 2017, Defendant participated in, encouraged, fostered, condoned and ratified the conduct of Defendant Neuenfeldt when Defendant Neuenfeldt used excessive

force in the pursuit of and injury of Plaintiff Bourassa, even though Plaintiff was defenseless, had no weapon of any kind, and was not threatening the Defendant or any third party.

57. As a direct and proximate result of Defendants' intentional, deliberate and/or indifference to the use of excessive force by Defendant Neuenfeldt, Plaintiff Bourassa sustained permanent, life-threatening injuries on June 18, 2017.

58. By consciously and deliberately overlooking the use of excessive force by Defendant Neuenfeldt, the Unknown Supervisory Personnel of the United States established a pattern, custom and practice of condoning and ratifying such misconduct and criminal activity and established a tolerated pattern of constitutional violations amongst their subordinate officers, including Defendant Neuenfeldt. The condonation of misconduct by Defendant Neuenfeldt was so comprehensive and well-known that Unknown Supervisory Personnel of the United States were emboldened to blatantly violate the constitutional rights of Plaintiff Bourassa and to commit crimes such as the excessive force used in the pursuit.

59. Because of their failure to prevent the continuing constitutional violations by subordinates and because of the establishment of the policies and practices described above, as well as the failure to adequately train their subordinates, Unknown Supervisory Personnel of the United States are individually liable for the constitutional violations committed by Defendant Neuenfeldt, inclusive and for the injuries to Plaintiff Bourassa, as a result of the June 18, 2017 pursuit.

60. Because of their acts and/or omissions in their failure to prevent the continuing constitutional violations by their subordinates and because of their establishment of the policies and practices described above, as well as their failure to adequately train their subordinates, Defendant Neuenfeldt is liable for his own independent acts and/or omissions

which were a contributing factor in causing the constitutional violations which caused the injuries to Plaintiff Bourassa as a result of the June 18, 2017 pursuit.

61.     Defendant Neuenfeldt's actions were intentional, willful, malicious, egregious, grossly reckless and negligent and unprovoked.

WHEREFORE, Plaintiff respectfully prays that this Court:

a.     Award compensatory damages to the Plaintiff, and against the Defendants, jointly and severally, in the amount of $5,012,884.20.

b.     Award punitive damages to Plaintiff, and against Defendants, jointly and severally.

c.     Award Plaintiff's costs and attorney's fees, pre-judgment and post-judgment interest, all other damages allowed by law, and any such further relief the Court deems just and equitable.

Respectfully submitted this 30th day of December 2020

/s/ *Jeffrey R. Beck*
Jeffrey R. Beck  SD #4244
BECK LAW, PROF. LLC
221 S. Phillips Ave., Ste. 204
Sioux Falls, South Dakota 57104
P: (605) 359-0135
F: (605) 275.0628
Becklaw@outlook.com
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Pursuant to the provisions of Federal Rule of Civil Procedure 38, as to causes of action against Defendants Neuenfeldt and Unknown Supervisory Personnel of the United States, and pursuant to *Bivens* and its' progeny, Plaintiff hereby demands a trial by jury of any issue triable of right by jury.

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Verna Bourassa GUARDIAN of Tahlen Aaron Bourassa

**(b)** County of Residence of First Listed Plaintiff: Minnehaha County, SD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeffrey R. Beck, Beck Law, Prof. LLC
221 South Phillips Avenue, Suite 204
Sioux Falls, SD 57104

## DEFENDANTS
United States of America, Robert Neuenfeld, INDIVIDUALLY, and Unknown Supervisory Personnel of the United States

County of Residence of First Listed Defendant: N/A
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. § 1271; 42 U.S.C.A. §§ 1981, 1983, 1985 and 1988
Brief description of cause:
Negligence, Use of Force, Motor vehicle accident - Plaintiff was driver of vehicle

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 5,012,884.20
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE: Hon. Lawrence L. Piersol
DOCKET NUMBER: 4:19-CV-4007-LLP

DATE: 12/30/2020
SIGNATURE OF ATTORNEY OF RECORD: /s/ Jeffrey R. Beck

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____