UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| VERNA BOURASSA, Guardian of Tahlen Aaron Bourassa<br><br>Plaintiff,<br>vs.<br><br>UNITED STATES OF AMERICA, ROBERT NEUENFELDT, individually and UNKNOWN SUPERVISORY PERSONNEL OF THE UNITED STATES, individually,<br><br>Defendants. | 4:20-CV-4210-LLP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

Pending before the Court is Defendant, Robert Neuenfeldt's ("Neuenfeldt"), Motion to Dismiss. (Doc. 9). For the following reasons, Neuenfeldt's Motion to Dismiss is granted as to Plaintiff's *Bivens* claim and denied as to Plaintiff's negligence claim.

## BACKGROUND

The following facts are a summary of the allegations in the Complaint filed by Plaintiff, Verna Bourassa, Guardian of Tahlen Aaron Bourassa ("Bourassa"). On June 18, 2017, Bourassa was driving a vehicle in the early morning hours on a rural road with two passengers, Michael Roemen ("Roemen") and Morgan Ten Eyck ("Ten Eyck"). (Doc. 1, ¶ 11). The Court takes judicial notice of the fact that neither Tahlen Bourassa, Roemen, nor Ten Eyck are Indians or members of the Flandreau Santee Sioux Tribe. *Roemen v. United States*, Civ. No. 19-4006 at Docket 27 (D.S.D. Apr. 13, 2020). Bourassa stopped his vehicle near a rural residence located at 24364 484th Avenue, Dell Rapids, South Dakota, which is located in Moody County, South Dakota, outside the reservation and jurisdiction of the Flandreau Santee Sioux Tribe ("the Tribe"). (Doc. 1, ¶ 12).

Near the driveway of the rural residence, it is alleged that Neuenfeldt, Chief of Police for Flandreau Santee Sioux Tribe, contacted Bourassa and threatened to take him to jail. (Doc. 1, ¶ 13). Bourassa drove away and was pursued by Neuenfeldt and Logan Baldini, an uncertified deputy for the Moody County Sheriff's Office in Neuenfeldt's police cruiser. (Doc. 1, ¶ 13).

1

Sargent Kurtz of the South Dakota Highway Patrol, was also initially involved in the pursuit. (Doc. 1, ¶ 14).

Plaintiff alleges that it is believed that neither Bourassa, Roemen, nor Ten Eyck had committed any crimes to justify the pursuit. (Doc. 1, ¶ 15). At the time Bourassa's vehicle was stopped, Plaintiff alleges that Neuenfeldt and the other officers on the scene knew the identity of the driver, Bourassa, and knew that he was actively being monitored by the South Dakota Parole Board through a GPS ankle bracelet. (Doc. 1, ¶¶ 16-17).

A high-speed pursuit of Bourassa's vehicle took place over thirty minutes reaching speeds in excess of 100 miles per hour on gravel roads. (Doc. 1, ¶ 18). The entire pursuit was located outside the Tribe's reservation boundaries. (Doc. 1, ¶ 25). On two occasions, spike strips were laid out without proper authorization. (Doc. 1, ¶ 19). Just prior to the accident, spike strips were laid out and a barricade of police cars forced Bourassa to take a dead-end gravel road. (Doc. 1, ¶ 20). Plaintiff alleges that Defendants "knew the dead-end road would result in an accident." (Doc. 1, ¶ 21). Plaintiff alleges that the South Dakota Highway Patrol aborted the pursuit and that it is believed that Neuenfeldt disregarded orders to terminate the pursuit. (Doc. 1, ¶ 22-23). Once the South Dakota Highway Patrol terminated pursuit, Neuenfeldt and Baldini continued the pursuit causing Bourassa's vehicle to lose control and roll several times throwing all three occupants from the vehicle. (Doc. 1, ¶ 24). As a result of the accident, all occupants suffered incapacitating injuries and were air lifted from the scene. (Doc. 1, ¶ 26). Bourassa suffered serious traumatic brain injury as a result of the accident, has sustained thousands of dollars in medical bills, and continues to undergo therapy for the permanent injuries he suffered in the accident. (Doc. 1, ¶¶ 26-29).

Plaintiff alleges that at all relevant times, the United States, by and through its Department of the Interior, Bureau of Indian Affairs, contracted with the Flandreau Santee Sioux Tribe and its Police Department pursuant to 25 U.S.C. § 5321, Indian Self Determination Act, to provide law enforcement services on the Flandreau Santee Sioux Indian Reservation. (Docs. 1, ¶ 4; 8, ¶ 4).

On or about June 11, 2019, Plaintiff submitted an Administrative Tort Claim in the amount of $5,012,884.20 to the United States Department of the Interior pursuant to 28 U.S.C. § 2675. (Doc. 1, ¶ 7). On July 8, 2019, the United States Department of the Interior denied Plaintiff's administrative claim. (Doc. 1, ¶ 8).

On December 30, 2020, Plaintiff filed a Complaint against the United States of America; Robert Neuenfeldt, individually; and Unknown Supervisory Personnel of the United States, individually. (Doc. 1). In his Complaint, he alleged claims of negligence against Defendants; a claim against Neuenfeldt under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 288, 397 (1971); and a *Bivens* claim against Unknown Supervisory Personnel of the United States. (Doc. 1).

On April 26, 2021, Defendant Robert Neuenfeldt filed a Motion to Dismiss the claims against him. (Doc. 9). In support of his motion, Neuenfeldt argues that the claims against him are barred by tribal sovereign immunity because the Complaint alleges that Neuenfeldt was acting as the Tribe's Chief of Police when he allegedly engaged in such conduct. (Doc. 10 at 52-56). To the extent the Court considers Neuenfeldt to be a federal employee[1] for purposes of the negligence claim alleged against him in Count I of the Complaint, Neuenfeldt argues that the United States is the proper party under the Federal Tort Claims Act ("FTCA"). (Doc. 10 at 56-58). With regard to the *Bivens* claim alleged against him in Count II of the Complaint, Neuenfeldt argues that there is nothing within *Bivens,* or any other authority relied upon by Plaintiff, to suggest that *Bivens* provides Plaintiff with a cause of action against employees of a tribal government. (Doc. 10 at 58-61). Neuenfeldt also contends that Plaintiff's *Bivens* claim is barred by the statute of limitations. (Doc. 10 at 62-64). Neuenfeldt moves to dismiss Count III of Plaintiff's Complaint alleging a *Bivens* claim against Unknown Supervisory Personnel because there are no allegations related to any supervisory conduct, policy, custom, or control of others related to Neuenfeldt. (Doc. 10 at 62).

The Motion to Dismiss has been fully briefed by the parties and is ready for disposition.

## STANDARD OF REVIEW

### 12(b)(1) Standard

Neuenfeldt argues that this court lacks subject matter jurisdiction over the claims against him because tribal sovereign immunity extends to his actions. The assertion of tribal "[s]overeign immunity is a jurisdictional question" which should be considered irrespective of the merits. *Rupp*

---

[1] It is alleged that at all relevant times, Neuenfeldt was performing functions under a contract entered into by and between the Tribe and the Federal Government pursuant to 25 U.S.C. § 5321.

*v. Omaha Indian Tribe*, 45 F.3d 1241, 1244 (8th Cir. 1995); *see also Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989). If Neuenfeldt "possess[es] sovereign immunity, then [this court has] no jurisdiction to hear [plaintiff's claims against him]." *See Rupp*, 45 F.3d at 1244.

Rule 12 provides in part that "a party may assert the following defenses by motion: . . . lack of subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1). When moving to dismiss under Rule 12(b)(1), a party "may assert either a 'facial' or 'factual' attack on jurisdiction." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). A facial attack on jurisdiction "is based on the complaint alone or on undisputed facts in the record." *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 637 (8th Cir. 2003). In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards. *Id.* Considering "matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1)" does not "convert the 12(b)(1) motion to one for summary judgment." *Harris*, 339 F.3d at 637 n.4.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). Plaintiff, as the party invoking jurisdiction, bears the burden to establish it. *See Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005).

**12(b)(6) Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson*

*Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015). A court assessing such a motion must accept all factual allegations in the complaint as true and draw all inferences in favor of the nonmovant. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010); *Brooks v. Midwest Heart Group*, 655 F.3d 796, 799 (8th Cir. 2011). Courts consider "plausibility'" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010)).

In considering a 12(b)(6) motion to dismiss, courts primarily look to the complaint and "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n. 3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

## DISCUSSION

### I. Tribal Sovereign Immunity

Neuenfeldt argues that because he was at all relevant times acting as the Flandreau Santee Sioux Tribe Chief of Police, Plaintiff's claims against him are barred by tribal sovereign immunity.

In *Roemen v. United States* and *Ten Eyck v. United States*, Civ. No. 19-4006 and 19-4007 (consolidated under Civ. No. 19-4006), this Court addressed whether tribal sovereign immunity barred claims for damages brought against Neuenfeldt by Roemen and Ten Eyck, the passengers in the car driven by Bourassa who were also seriously injured in the accident. The Court will incorporate by reference the analysis it conducted in its Memorandum Opinion and Order as to this issue in those cases. (Civ. No. 19-4006, Doc. 31; Civ. No. 19-4007, Doc. 26). The Court concluded therein, as it does here, that "whether tribal sovereign immunity bars a claim for damages against Neuenfeldt depends on whether or not Neuenfeldt was exercising the inherent sovereign powers of the Tribe. If so . . . permitting such a claim to proceed would have the effect

5

of interfering with the Tribe's powers of self-government." (Civ. No. 19-4006, Doc. 31 at 191; Civ. No. 19-4007, Doc. 26 at 153).

It is undisputed that Indian tribes have the inherent power to enforce their criminal laws against Indians within the boundaries of the reservation.[2] *United States v. Lara*, 541 U.S. 193, 197 (2004); *United States v. Wheeler*, 435 U.S. 313, 323-26 (1978), *superseded in statute on other grounds as recognized in United States v. Lara*, 541 U.S. 193 (2004). Tribes generally do not have criminal jurisdiction over non-Indians, *Oliphant v. Suquamish Indian* Tribe, 435 U.S. 191, 212 (1978), although tribal police have the authority to detain non-Indians who commit crimes within Indian country until they can be turned over to the appropriate state or federal authorities, *Duro v. Reina*, 495 U.S. 676, 696-97 (1990) ("The tribes [ ] possess [ ] traditional and undisputed power to exclude persons whom they deem to be undesirable from tribal lands. Tribal law enforcement authorities have the power to detain those who disturb public order on the reservation, and if necessary, to eject them. Where jurisdiction to try and punish such an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities."); *United States v. Terry*, 400 F.3d 575, 579 (8th Cir. 2005) (explaining that tribal officers have the authority "to detain non-Indians whose conduct disturbs the public order on their reservation").

In the present case, it is alleged that the pursuit was initiated in Moody County, South Dakota, a location outside the Tribe's reservation and not within the jurisdiction of the Tribe. It is alleged the pursuit was never on tribal land and the Court takes judicial notice of the fact that the stop occurred outside the reservation and that neither Bourassa, nor Roemen or Ten Ecyk are Indians. Although Neuenfeldt was acting in his capacity as a police officer at all times pertinent to this case, the Court concludes that Neuenfeldt was not exercising the inherent sovereign powers of the Tribe. Neuenfeldt's Motion to Dismiss based on tribal sovereign immunity is thus denied.

## II.    Negligence Claim

Neuenfeldt contends that at all times, he was acting pursuant to a section 638 contract with the federal government. Neuenfeldt argues that as a result, he has absolute immunity under the

---

[2] The Sixth Circuit has ruled that tribes have inherent authority to prosecute their members for off-reservation conduct where necessary to protect tribal self-government or control internal relations. *See Kelsey v. Pope*, 809 F3d 849 (6th Cir. 2016).

Federal Tort Claims Act from any common law torts claims allegedly committed within his scope of employment.

"The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 516 (8th Cir. 2001) (quoting *United States v. Orleans*, 425 U.S. 807, 813 (1976)). "Under the FTCA, the United States is liable, as a private person, for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment.'" *Western Nat. Mut. Ins. Co. v. United States*, 964 F.Supp. 295, 297 (D. Minn. 1997) (quoting 28 U.S.C. § 1346(b)). The remedy provided by the FTCA for injuries resulting from the activities of [Federal] Government employees "is exclusive of any other civil action or proceeding for money damages." *United States v. Smith*, 499 U.S. 160, 162 (1991) (quoting 28 U.S.C. § 2679(b)(1)).

The Federal Tort Claims Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)); *see also United States v. Smith*, 499 U.S. 160, 161-62 (1991). Under the FTCA, "an action against the United States is the only remedy for injuries caused by federal employees acting within the scope of their employment." *Anthony v. Runyon*, 76 F.3d 210, 212-13 (8th Cir. 1996). The purpose of the FTCA is "to shield covered employees not only from liability but from suit" and to place the "cost and effort of defending the lawsuit . . . on the Government's shoulders." *Osborn*, 549 U.S. at 248, 252.

When a federal employee is sued, the Attorney General has the authority to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). Under the FTCA's implementing regulations, the United States Attorney for the district court in which the civil action at issue is brought "is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose." 28 C.F.R. § 15.4(a). Upon certification "that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such a claim in a United States district court

shall be deemed an action against the United States . . . and the United States shall be substituted as a party defendant." 28 U.S.C. § 2679(d)(2).

In the present case, the United States has not certified that Neuenfeldt was acting within the scope of his office or employment at the time the incident out of which Plaintiff's claims arose and Plaintiff has not alleged otherwise. Nor has Plaintiff petitioned the Court to find and certify that Neuenfeldt was acting within the scope of his employment. *See* 28 U.S.C. § 2679(d)(3). Accordingly, the Court finds that it has subject matter jurisdiction over Plaintiff's negligence claim against Neuenfeldt. *See Harper v. United States Dep't of Interior*, Civ. No. 1:21-00197, 2021 WL 5281589, at *15 (D. Idaho Nov. 12, 2021), *appeal docketed*, No. 22-35036 (9th Cir. Jan. 13, 2022). The Court does note that in a companion case arising out of the same incident, the United States has certified that Neuenfeldt was acting with the scope of his office or employment. *See Roemen v. United States* and *Ten Eyck v. United States*, consolidated under Civ. No. 19-4006 (D.S.D.).

### III.  *Bivens* Claim

Neuenfeldt moves to dismiss the *Bivens* claim against him on the basis that it is barred by the statute of limitations. In support of his Motion to Dismiss, Neuenfeldt argues that Plaintiff's *Bivens* claim is barred by tribal immunity and argues that there is nothing within *Bivens*, or any other authority relied upon by Plaintiff, to suggest that *Bivens* provides Plaintiff with a cause of action against employees of a tribal government.

When considering a Rule 12(b)(6) motion based on the running of the statute of limitations, the Court may only grant the motion if it is clear from the face of the complaint that the limitations period has run and the complaint contains no facts to toll that running. *Bishop v. DeLaval Inc.*, 466 F.Supp.3d 1016, 1021 (W.D. Mo. 2020) (citing *JJ Holand Ltd v. Fredrikson & Byron, P.A.*, Civ. No. 12-3064, 2013 WL 3716948, at *5 (D. Minn. Jul. 12, 2013) (citing *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004)); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2001) ("As a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismiss unless the complaint itself establishes the defense.").

There is no federal statute of limitations for *Bivens* actions. Generally, *Bivens* actions are governed by the same statute of limitations as actions under 42 U.S.C. § 1983. *See Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995). SDCL § 15-2-15.2 provides a 3-year statute of limitations for "any action brought under the federal civil rights statutes" and this statute of limitations is applied by courts to § 1983 actions. *See Bell v. Fowler*, 99 F.3d 262, 266 (8th Cir. 1996) (applying SDCL § 15-2-15.2 as statute of limitations in a § 1983 case); SDCL § 15-2-15.2 ("Any action brought under the federal civil rights statues may be commenced only within three years after the alleged constitutional deprivation has occurred."). South Dakota's limitations period for personal injury actions is also 3 years. SDCL § 15-2-14(3). As discussed more fully below, the Court finds in applying either statute, Plaintiff's *Bivens* claim is barred by the statute of limitations.

It is undisputed that Plaintiff's Complaint was filed more than three years after his cause of action accrued. (Doc. 14) ("The Plaintiff acknowledges that the 'Defendant [Neuenfeldt] is correct that the date of the incident was on June 18, 2017, and that more than three years later the action was commenced on December 30, 2020."). While state law governs the application of the statute of limitations in *Bivens* actions, federal law determines when a cause of action "accrues." *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991). In general, a cause of action accrues when a plaintiff is "in possession of the critical facts that he has been hurt and who inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). Because Plaintiff was injured on June 18, 2017, and knew that he was injured due to the actions of defendant Neuenfeldt, his cause of action accrued on that day. However, Plaintiff did not file this lawsuit until December 30, 2020.

Plaintiff argues that his *Bivens* claim is not time-barred because the statute of limitations was tolled under SDCL § 15-2-25 during the time he spent exhausting his administrative remedies on his FTCA claim. Under South Dakota law, "[w]hen the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." SDCL § 15-2-25. Plaintiff argues that in *Johnson v. Rivera*, 272 F.3d 519, 521-22 (7th Cir. 2001), the Seventh Circuit Court of Appeals addressed a situation analogous to the one in this case and concluded that a prisoner's filing of a § 1983 action was tolled by the administrative filing requirement under the Prison Litigation Reform Act ("PLRA").

The Court finds the facts of *Johnson v. Rivera* to be distinguishable from those present in this case. Similar to a *Bivens* action, a § 1983 action does not have a federal statute of limitations and courts thus apply the statute of limitations and tolling laws of the state where the claim accrues. *See Sanchez*, 49 F.3d at 1330. In *Johnson v. Rivera*, the petitioner's injury accrued in Illinois. Similar to SDCL § 15-2-25, under Illinois law, a court must toll the statute of limitations if a "statutory prohibition" exists that prevents a plaintiff's cause of action. *Id.* at 521. The court in *Johnson v. Rivera* found that such a statutory prohibition existed because the PLRA requires exhaustion of administrative remedies prior to filing suit under § 1983. *Id.* at 521 (citing 42 U.S.C. § 1997e(a)). The court stated that "[t]olling statutes are designed to avoid a 'procedural catch 22,' in which a statute or court order prevents a potential plaintiff from properly filing a cause of action." *Id.* The court noted that such a "catch 22" was evident because a prisoner who files a suit under § 1983 prior to exhausting administrative remedies risks dismissal based upon the PLRA exhaustion requirements whereas the prisoner who waits to exhaust his administrative remedies risks dismissal based upon untimeliness. *Id.* The court held that "a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process." *Id.* at 522.

Unlike in *Johnson v. Rivera*, Plaintiff is not a prisoner and there is no administrative exhaustion requirement with regard to Plaintiff's *Bivens* claims. Thus, there is no potential "statutory prohibition" that prevented Plaintiff from timely filing his *Bivens* claims as required to toll a claim under SDCL § 15-2-25, nor, as discussed more fully below, is Plaintiff's *Bivens* claim subject to equitable tolling under South Dakota law.

Even assuming that equitable tolling applies in certain circumstances to civil actions in South Dakota,[3] Plaintiff has not established that inequitable circumstances "truly beyond the control of the plaintiff" prevented him from timely filing his *Bivens* claim. *Dakota Truck Underwriters*, 689 N.W.2d at 202; *see also In re Estate of Norman D. French*, 956 N.W.2d at 811-12 ("The threshold for consideration of equitable tolling is inequitable circumstances not caused by the plaintiff that prevent the plaintiff from timely filing.").

---

[3] *See In re Estate of Norman D. French*, 956 N.W.2d 806, 811 (S.D. 2021); *Citibank, N.A. v. South Dakota Dep't of Revenue*, 868 N.W.2d 381, 394 n.10 (S.D. 2015); *Anson v. Star Brite Inn Motel*, 788 N.W.2d 822, 825 n.2 (S.D. 2010).

In examining whether or not the statute of limitations is tolled on a *Bivens* action while a non-incarcerated plaintiff exhausts his or her administrative remedies on an FTCA claim, the Court finds instructive the United States Supreme Court's decision in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975). There, the petitioner had argued that the limitations period on his section 1981 claim should be tolled during the pendency of his administrative complaint with the EEOC. *Id.* The Supreme Court disagreed. The Court stated that section 1981 and Title VII claims are separate and distinct causes of action and that the petitioner was required to take the steps necessary to preserve each claim independently. *Id.* at 461, 466. The Court noted that the "legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Id.* at 459. The Court also noted that "the filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action" and that "Congress did not expect that a § 1981 court action usually would be resorted to only upon completion of Title VII procedures and the Commission's efforts to obtain voluntary compliance." *Id.* at 461. The Court concluded that "the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent." *Id.* at 461.

Because there is no relevant federal statute of limitations for a cause of action under § 1981, the Supreme Court in *Johnson v. Railway Express Agency* stated that the controlling period would ordinarily be the one provided by state law unless its application would be "inconsistent with the federal policy underlying the cause of action under consideration." *Id.* at 465. The petitioner in *Johnson* conceded that under state law, his §1981 claim would not be tolled, *id.* at 463, but argued that the failure to toll the limitations period during the pendency of an administrative complaint would conflict with the federal policy under Title VII in support of conciliation and voluntary compliance, *id.* at 465. The Court acknowledged the high probability that a plaintiff may be forced to file his § 1981 claim in court before the EEOC has administered its administrative proceedings and stated that if such was the case, a plaintiff may ask the court to stay proceedings until the administrative efforts were completed. *Id.* However, the Court concluded that § 1981 was a remedy separate and apart from the more elaborate and time-consuming procedure of Title VII, that the petitioner could have filed his § 1981 claim any time after his cause of action accrued, but instead "slept on his § 1981 rights." *Id.* at 466. The Court did not find that any policy reason

excused the petitioner's failure to take the minimum steps necessary to preserve each claim independently. *Id.*

As in *Johnson v. Railway Express Agency*, this Court finds no federal policy that would override a state's interest in prohibiting the prosecution of stale claims. *See Johnson*, 421 U.S. at 465 (citing *Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 706-07 (1966)). Like the section 1981 and Title VII claims that the Supreme Court examined in *Johnson v. Railway Express Agency*, FTCA and *Bivens* claims are considered by courts to be complementary, but separate and distinct causes of action. *Atkins v. Williams*, Civ. No. 5:20-CV-00126, 2020 WL 5505122, at *4 (E.D. Ky. Sept. 11, 2020) ("Constitutional claims seeking to recover from individual officers pursuant to *Bivens* and tort claims seeking to recover from the United States based on allegations of negligence by its employees are separate and distinct claims."); *Vazquez v. Nagel*, Civ. No. 10-4217, 2012 WL 1593199, at *9 (D. Minn. Feb. 13, 2012) (stating that a "claim brought under *Bivens* is a distinct cause of action from a claim brought pursuant to the [FTCA]."). The FTCA has a separate statutory scheme and a plaintiff cannot bring a constitutional tort claim under the FTCA. *Vazquez*, 2012 WL 1593199 at *9 (citing *Washington v. Drug Enforcement Admin.*, 183 F.3d 868, 873 (8th Cir. 1999)). In addition, exhaustion of administrative remedies on a FTCA claim is not a prerequisite to bringing a *Bivens* claim. A FTCA claim and a *Bivens* claim may be brought together in one lawsuit or in separate lawsuits, and a plaintiff must make strategic decision in electing how best to litigate a lawsuit potentially involving both claims. *See Sanchez v. McLain*, 867 F.Supp.2d 813, 817 (S.D. W.Va. 2011) ("[I]f a plaintiff elects to pursue a remedy under the FTCA to judgment, he risks dismissal of any *Bivens* claim . . . whether the FTCA claim is brought before or after the *Bivens* claim or . . . both claims are brought in the same suit."); *Manning v. United States*, 546 F.3d 430, 437 (7th Cir. 2008) (involving a case in which a FTCA claim was litigated to judgment in a bifurcated proceeding subsequent to obtaining a favorable *Bivens* judgment and holding that under the judgment bar rule, judgment on the FTCA claim required vacatur of the earlier judgment on the *Bivens* claim).

Most courts that have addressed this issue have largely concluded that administrative exhaustion of FTCA claims does not toll the statute of limitations as to a *Bivens* claim. *See, e.g. Gonzalez-Rucci v. United States*, 218 F.Supp.2d 161, 163 (D.P.R. Jul. 29, 2002) ("Filing of the administrative claim with the INS did not toll the statute of limitations for *Bivens* purposes."); *Uhl*

*v. Swanstrom*, 876 F.Supp. 1545, 1559 (N.D. Iowa 1995), *aff'd on other* grounds, 79 F.3d 751 (5th Cir. 1996) (finding that because the FTCA administrative process was voluntary as to plaintiff's § 1983 claim, the FTCA administrative process did not toll the statute of limitations on § 1983 claim); *Omar v. Blackman*, Civ. No. 13-4542, 590 Fed.Appx. 162, 166 (3d Cir. 2014) (unpublished) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 466 (1975)) (stating that nothing prevented the plaintiff from initiating his § 1983, 1985, 1986 or *Bivens* claims in federal court before or during the pendency of ICE's review of his FTCA claim and that "[t]olling the statute of limitations to save parallel claims that do not require exhaustion of administrative remedies would unjustifiably extend the statute of limitations for those claims."); *Tucker v. Belaski*, 86 F.3d 1167, 1996 WL 273891 at *2 n.6 (10th Cir. 1996) (unpublished) (concluding that plaintiff's pursuit of administrative remedies under the FTCA would not toll the 2-year statute of limitations applicable to plaintiff's *Bivens* claim); *Atkins v. Williams*, Civ. No. 20-00126, 2020 WL 5505122, at *4 (E.D. Ky. Sept. 11, 2020) (stating that *Bivens* and FTCA claims are "separate and distinct claims" and that "whether prison staff interfered with [plaintiff's] ability to obtain an Administrative Tort Claim form used to initiate the administrative process with respect to a potential negligence claim is irrelevant to whether the limitations period should be tolled with respect to his *Bivens* claims."); *Roseboro v. Brown*, Civ. No. 1:13-CV-513, 2015 WL 631352, at *5 (E.D. Va. Feb. 12, 2015) ("[T]he fact that [Plaintiff's] FTCA claim was timely filed does not merit equitable tolling of the *Bivens* statute of limitations."); *McCorvey v. United* States, Civ. No. 12-00757, 2014 WL 4594475, *7 (S.D. Ala. Sept. 11, 2014) (holding that Plaintiff's administrative claim under the FTCA was not a prerequisite to his constitutional claims against the VA employees and thus, the administrative claim did not serve to toll the two-year limitations period applicable to those claims."); *Raines v. Lappin*, Civ. No. 11-5681, 2013 WL 3283930, at *6 (D.N.J. Jun. 26, 2013) ("[T]he statute of limitations on Plaintiff's *Bivens* claim cannot be tolled by virtue of his attempts to exhaust administrative remedies on his FTCA claim; they are simply two different causes of action."); *Nails v. U.S. Dep't of Hous. and Urban Dev.*, Civ. No., 2010 WL 4386540, at *1 (M.D. Ala. Oct. 29, 2010) (holding that plaintiff's *Bivens* claim was not tolled pending the completion of HUD's administrative review); *Ke v. Ass'n of Pa. State of College & Univ. Faculties,* Civ. No. 10-448, 2011 WL 902418, at *8 (M.D. Pa. Mar. 1, 2011), *adopting report and recommendation*, 2011 WL 902415 (Mar. 15, 2011) (finding that pursuit of administrative remedies under Title VII did not toll the limitations period for § 1981, 1983 or 1985 claims).

In sum, South Dakota courts have held that the statute of limitations must be enforced. The Court finds no statutory prohibition that prevented Plaintiff from timely filing his *Bivens* claim. In addition, the Complaint makes no claim that there were circumstances beyond Plaintiff's control that prevented Plaintiff from bringing his *Bivens* claim in a timely manner, nor does the Court find that the application of state statute of limitations and tolling law would be inconsistent with federal law. Plaintiff's *Bivens* claim is therefore dismissed as being barred by the statute of limitations. The Court need not address Neuenfeldt's other arguments in support of his Motion to Dismiss Plaintiff's *Bivens* claim.

### IV.  Supervisorial Employees

Neuenfeldt moves to dismiss Plaintiff's *Bivens* claim against "Unknown Supervisory Personnel of the United States." Neuenfeldt acknowledges that "if and to the extent that this cause of action is alleged solely and entirely against the unknown supervisory personnel of the United States," he "would lack standing and makes no motion with respect to this claim." (Doc. 10 at 62). If, however, he is a defendant with regard to this claim, Neuenfeldt argues that "there are no allegations related to any supervisory conduct, policy, custom, or control of others related to Defendant Neuenfeldt" and contends that this claim must therefore be dismissed against him.

In his response, Plaintiff states that his *Bivens* action related to supervisory conduct, policy, custom, or control, is directed at Defendant "Unknown Supervisory Personnel of the United States," not at Defendant Neuenfeldt. Neuenfeldt's Motion to Dismiss this claim is thus denied as moot.

Accordingly, it is hereby ORDERED that:

1) Neuenfeldt's Motion to Dismiss Plaintiffs' *Bivens* claims is GRANTED because it is barred by the statute of limitations;

2) Neuenfeldt's Motion to Dismiss Plaintiffs' negligence claims is DENIED; and

3) Neuenfeldt's Motion to Dismiss Supervisorial claim is DENIED as moot.

Dated this 24th day of January, 2022.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK